IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONALD PARIS,

      Plaintiff,                          No. CIV S-05-2128 FCD GGH P

    vs.

B. NAKU,

      Defendant.                     FINDINGS & RECOMMENDATIONS

         Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendant Dr. Naku violated his Eighth Amendment right to adequate medical care. Pending before the court is defendant Naku's motion for summary judgment filed January 22, 2007. After carefully considering the record, the court recommends that defendant's motion be granted.

Summary Judgment Standards Under Rule 56

         Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

1 Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the
2 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
3 nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

4        In the endeavor to establish the existence of a factual dispute, the opposing party
5 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
6 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
7 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
8 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
9 genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.
10 56(e) advisory committee's note on 1963 amendments).

11        In resolving the summary judgment motion, the court examines the pleadings,
12 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
13 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
14 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
15 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.
16 at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
17 obligation to produce a factual predicate from which the inference may be drawn.  See Richards
18 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
19 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than
20 simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record
21 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
22 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

23        On February 27, 2006, the court advised plaintiff of the requirements for opposing
24 a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
25 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.
26 1988).

Legal Standard for Eighth Amendment Claim

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

/////

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is <u>actually</u> aware. <u>Id.</u> at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Id.</u> at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. <u>Id.</u> at 840-42, 114 S. Ct. at 1981. However, obviousness <u>per se</u> will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to <u>competently</u> treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. <u>Id.</u>

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. <u>McGuckin</u>, 974 F.2d at 1060, citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the

1  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those
2  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of
3  the defendant." McGuckin, 974 F.2d at 1061.
4        Superimposed on these Eighth Amendment standards is the fact that in cases
5  involving complex medical issues where plaintiff contests the type of treatment he received,
6  expert opinion will almost always be necessary to establish the necessary level of deliberate
7  indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there
8  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the
9  treatment he received equated with deliberate indifference thereby creating a material issue of
10 fact, summary judgment should be entered for defendants. The dispositive question on this
11 summary judgment motion is ultimately not what was the most appropriate course of treatment
12 for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,
13 criminally reckless.

Discussion

      The following facts are undisputed. On June 20, 2004, plaintiff was stabbed by another inmate with a knife, which penetrated plaintiff's shoulder. Following the incident, defendant Naku examined plaintiff. Defendant determined that plaintiff did not require a chest tube or emergency treatment at a hospital. On that day, plaintiff was placed in administrative segregation. Plaintiff had chest x-rays on June 22, 2004, June 25, 2004, and June 28, 2004.

      In support of his summary judgment motion, defendant has submitted his own declaration which states, in relevant part,

> 5. On June 20, 2004, I performed a physical examination on plaintiff and recall that he had a small stab wound to his right shoulder. Plaintiff sustained a 10% pneumothorax as a result of the stabbing incident and a minor air leak, which is not enough to produce a complete lung collapse. I consulted with Dr. Noriega about plaintiff's medical condition and because plaintiff's vital signs, his blood pressure and oxygen levels and my examination of plaintiff showed that he was not in shock and was in stable condition, it was determined that it was not medically necessary to transport him to an outside hospital for further treatment. Plaintiff's oxygen saturation level was between 98%-100%, and he was able to

breathe, which signifies he did not need a chest tube or emergency treatment at a hospital.

6. Had plaintiff not been well oxygenated or shown signs of a complete lung collapse or shock, I would have sent him to the hospital immediately. Moreover, medication was prescribed to plaintiff to alleviate his pain from the stab wound.

7. Furthermore, on June 20, 2004, plaintiff was placed in administrative segregation for his own safety, to protect him from the immediate threat of another attack, and also for the safety and security of other inmates and the prison staff. Plaintiff did not remain in the administrative segregation unit, but was released back to the general inmate population, once the threat of imminent danger had subsided.

8. Plaintiff's vital signs were taken three times a day after the incident and he was monitored on an ongoing basis, including when he was placed in administrative segregation after the attack. Repeat chest x-rays were ordered to monitor his condition and determine if he was improving. The chest x-rays on June 22, 2004, showed that plaintiff had suffered a small right pneumothorax of around 10%. The chest x-rays from June 25, 2004, showed that his pneumothroax was resolving. The June 28, 2004, chest x-rays showed that plaintiff's right lung had resumed normal functioning; the right pneumothroax appeared to have resolved, his lung appeared to have fully expanded without residual and his heart was normal.

Naku declaration attached to defendant's January 22, 2007, summary judgment motion.

Plaintiff contends that as a result of the stabbing, he suffered a collapsed lung. Plaintiff alleges that as a result of defendant's failure to have him transported to an outside hospital for emergency medical care, he lost 20% of his lung capacity and suffered a heart attack. Plaintiff also claims that immediately following the incident, defendant Naku gave him too much Demerol.

In support of his claim that he suffered a collapsed lung, lost 20% of his lung capacity and had a heart attack, plaintiff refers the court to his medical records attached to his complaint. Defendant correctly objects that these records are not properly verified. See Fed. R. Evid. 901. Accordingly, the court may not consider these records. However, even if the records were admissible, they contain no evidence indicating that plaintiff had a collapsed lung, lost 20% of his lung capacity or had a heart attack. Because plaintiff is not a medical expert, his own opinion that he suffered these conditions is not admissible.

7

In his opposition and complaint, plaintiff also argues that defendant should have sent him to an outside hospital immediately after the stabbing and gave him too much Demerol. Again, because plaintiff is not a medical expert, his own opinion regarding these matters is not admissible.

For the reasons discussed above, the court finds that plaintiff has offered no evidence countering the information contained in defendant's declaration. Accordingly, the court finds that the statements made in defendant's declaration are undisputed. Because defendant's evidence demonstrates that he did not act with deliberate indifference to plaintiff's serious medical needs, the court recommends that his summary judgment motion be granted.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's January 22, 2007, summary judgment motion be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 5/17/07

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

paris.sj